WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Thorstenson, et al., | No. CV-25-02413-PHX-SHD |
| Plaintiffs, | **ORDER** |
| v. | |
| Unknown Parties, et al., | |
| Defendants. | |

Pending before the Court are applications to proceed in forma pauperis ("IFP") filed by Plaintiffs Keith Thorstenson[1] and Paul Hartl (collectively, "Plaintiffs") (Docs. 15, 30, 31); a petition for writ of mandamus (the "Petition"), (Doc. 1); several emergency motions for a temporary restraining order ("TRO") and preliminary injunction ("PI"), (Docs. 6, 7, 14); a motion for an evidence preservation order, (Doc. 8); a motion for asset forfeiture and dissolution of Andrew The Homebuyer LLC, (Doc. 16); a motion for an FBI civil rights investigation, (Doc. 17); a motion to consolidate, (Doc. 29); and a motion for service of process by the U.S. Marshal, (Doc. 34). For the following reasons, the Petition is dismissed for lack of subject matter jurisdiction, the motion for leave to amend is denied, and the remaining motions are denied as moot.

---

[1] In his initial filing, Thorstenson stated that his name was Keith Thorstenson, (Doc. 1 at 1), but he later stated that Thorstenson is "the former legal name of Plaintiff Keith Anthony Hartl," (Doc. 32 at 1). Thorstenson requested that the case caption be updated to reflect his "current legal name[]." (*Id.* at 1–2.) This request is denied because Thorstenson has not provided sufficient information that his name has been legally changed.

## I. BACKGROUND

On July 9, 2025, the Court received the mailed Petition, which appears to have been mailed on July 7, 2025. (Doc. 1.)[2] In it, Thorstenson requests that the Court "strike from the record Magistrate Judge [Melissa] Julian's Order to Show Cause dated May 30, 2025." (*Id.* at 4.) Judge Julian is not a Magistrate Judge with this Court, but instead is a Judge on the Maricopa County Superior Court (the "State Court"). *See Judge Melissa Julian*, Maricopa Cnty. Super. Ct. (last visited Aug. 14, 2025), https://www.superiorcourt.maricopa.gov/JudicialBiographies/judicialBio.asp?jdgID=531&jdgUSID=13868 [https://perma.cc/SW7T-V3VT]. Thorstenson appears to have been a defendant in a case before Judge Julian in the State Court, in which judgment was entered in June 2025, before Thorstenson mailed the Petition. *See Civil Court Case Information – Case History: CV2025-010167*, Maricopa Cnty. Super. Ct. (last visited Aug. 14, 2025), https://www.superiorcourt.maricopa.gov/docket/CivilCourtCases/caseInfo.asp?caseNumber=CV2025-010167 [https://perma.cc/YRD2-557H]. Nonetheless, Thorstenson argues that this Court may issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651, to compel the State Court to take action and "[d]eclare that [Judge Julian] lacked authority to issue the" order at issue. (Doc. 1 at 5.)

On July 11, 2025, the Court ordered Thorstenson to pay the filing fee or complete an IFP application within 30 days, as Thorstenson had not submitted either with the Petition. (Doc. 3.)

Then, on July 28, 2025, Thorstenson moved for leave to file a First Amended Complaint ("FAC"), lodging the proposed pleading. (Docs. 4, 5.) In this proposed pleading, Thorstenson added many defendants, none of which included Judge Julian, and added new claims, none of which included the allegations or requested relief set forth in the Petition. (*Compare* Doc. 1, *with* Doc. 4.) Plaintiffs requested amendment to add one defendant, their "neighbor David Carey," but did not explain the changes to the other defendants. (*See* Doc. 4 at 2.) Furthermore, Plaintiffs sought to "add [several] paragraphs

---

[2] Although the Petition is dated May 31, 2025, the stamp on the envelope is dated July 7, 2025. (*See* Doc. 1 at 6; Doc. 1-1 at 1.)

to the First Amended Complaint," but Plaintiffs did not explain what Complaint they sought to amend, given that the case-initiating document in this action was the Petition. (*See id.* at 4.)

The same day, Thorstenson filed two motions for TRO and PI, (Docs. 6, 7), the motion for evidence preservation, (Doc. 8), along with several other documents that the Court struck on July 31, 2025, (Doc. 12).

On August 1, 2025, Plaintiffs filed several documents. First, Plaintiffs filed a purported "Second Amended Complaint for Damages and Equitable Relief," in which they named multiple defendants other than Judge Julian, including the City of Phoenix and Maricopa County. (Doc. 13.) Plaintiffs also allege that the defendants engaged in a "criminal enterprise operating for over thirty years" to steal Plaintiffs' property. (*Id.* at 2.)

Second, Plaintiffs filed another emergency motion for TRO and PI, in which Plaintiffs request immediate relief to stop "ongoing neighbor intimidation, witness tampering, and threats that directly interfere with this federal RICO litigation and endanger Plaintiffs' physical safety." (Doc. 14 at 1–2.)

Third, Thorstenson filed an IFP application on his own behalf and on behalf of Hartl. (*See* Doc. 15 at 9.) Thorstenson stated he is "authorized to act as attorney-in-fact" for Hartle but indicated Hartl is under a guardianship. (*Id.* at 9–10.) A review of the Maricopa County Superior Court's docket shows a probate case in Hartl's name, *see In re Hartl*, PB2023-051681 (Ariz. Super. Ct. 2023), and the docket suggests that the Maricopa County Public Fiduciary is Hartl's appointed guardian. For example, the docket text for the Letter of Appointment references the Public Fiduciary, and the Public Fiduciary filed a guardianship report in February 2025. *See Probate Court Case Information – Case History: PB2023-051681*, Maricopa Cnty. Super. Ct. (last visited Aug. 12, 2025), https://www.superiorcourt.maricopa.gov/docket/ProbateCourtCases/caseInfo.asp?caseNumber=PB2023-051681 [https://perma.cc/L2CG-YB3Z]. Furthermore, the IFP application references the Public Fiduciary as having control of Hartl's "benefits" and as having "imposed" the guardianship, suggesting Thorstenson is not Hartl's guardian and has no

authority to act on his behalf. (Doc. 15 at 2, 9.)

Fourth, Plaintiffs filed an emergency motion requesting "emergency asset forfeiture and business entity dissolution against 'Andrew The HomeBuyer LLC,'" which Plaintiffs assert "conduct[s] criminal enterprise operations . . . in violation of federal RICO statutes." (Doc. 16 at 1–2.)

Fifth, Plaintiffs filed an emergency motion requesting "immediate intervention by the FBI Civil Rights Division to investigate the jailhouse extortion documented in Exhibit 544." (Doc. 17 at 1.) The referenced exhibit is not part of the record.

Sixth, Plaintiffs filed a motion to consolidate this action with a closed action before Judge Humetewa, Case No. 3:25-cv-08125-DJH. (Doc. 29.)

Finally, Plaintiffs filed several other documents that were stricken. (*See* Docs. 26, 28.)

On August 11, 2025, Plaintiffs filed separate IFP applications. (Docs. 30, 31.) Plaintiffs also filed a motion for service of process by the U.S. Marshals, asserting incorrectly that the Court had "granted" their IFP applications on July 30, 2025. (*See* Doc. 34 at 2.)

**II.	PETITION FOR WRIT OF MANDAMUS**

As mentioned, the crux of the Petition is that the State Court improperly entered an Order, and that this Court should direct the State Court to strike that Order from its record. (Doc. 1 at 4.) Because the Court lacks jurisdiction to do so, the Petition is dismissed.

"Federal courts are courts of limited jurisdiction." *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears," *Stock W., Inc. v. Confederated Tribes of the Colvill Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989), and the "party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists," *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Furthermore, even if a party does not challenge subject matter jurisdiction, federal courts have an "independent obligation to examine their own jurisdiction." *United States v. Hays*, 515 U.S. 737, 742 (1995).

Under the *Rooker-Feldman* doctrine, federal district courts generally lack jurisdiction to review a final state court decision. *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923). The reasoning underlying this principle is that the United States Supreme Court is the only federal court with jurisdiction to hear direct appeals from a final state court judgment. *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Therefore, if a party is disappointed with a state court judgment, that party may not appeal to federal district court, even if the issue would be otherwise within federal district court jurisdiction based upon a federal question or diversity of citizenship. *Id.* at 1155. The doctrine applies to both final state court judgments and interlocutory orders. *See Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). "The purpose of the doctrine is to protect state judgments from collateral federal attack." *Id.* The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Miroth v. County of Trinity*, 136 F.4th 1141, 1148–49 (9th Cir. 2025).

To determine whether *Rooker-Feldman* applies, and whether a court lacks jurisdiction, courts first consider whether the action was essentially brought as an appeal from an adverse state-court decision. *See Lance v. Dennis*, 546 U.S. 459, 463 (2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). This is because the doctrine applies when "the losing party in state court filed suit in federal court after the state proceedings ended." *Exxon Mobil*, 544 U.S. at 291. A federal action constitutes a de facto appeal where the "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003).

Here, Thorstenson complains that a State Court order was entered without consent and jurisdiction, his demand to strike the order was "pending with no disposition," and

without mandamus, he "will suffer irreparable due process injury." (Doc. 1 at 4–5.) He also argues that the order was erroneous because it lacked "findings of fact or conclusions of law as required by constitutional due process," which "deprive[d] [Thorstenson] of meaningful appellate review." (*Id.* at 5.) *See Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) ("A de facto appeal exists when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." (quotation marks omitted)). In other words, Thorstenson alleges he will be injured if (1) this Court does not direct the State Court strike its order, which (2) the State Court committed legal error by entering, (3) in a case that has had final judgment entered: Thorstenson "did not suffer an injury out of court and then fail to get relief from state court; [his] injury came from the [state court] judgment." (*See* Doc. 1 at 4–5.) *See Noel*, 341 F.3d at 1164–65 (second alteration in original) (citation omitted).

Such a request invites this Court's "review and rejection" of the State Court's decision and is prohibited as a de facto appeal. *Miroth*, 136 F.4th at 1148; *see also Noel*, 341 F.3d at 1161 ("To the extent the federal plaintiffs sought to bring a direct challenge to the correctness of the decision of the state court, this was a forbidden de facto appeal."); *Bianchi*, 334 F.3d at 900 (holding *Rooker-Feldman* barred request for an "order compelling the state court to recall its decision" because the redress sought was "an undoing of the prior state-court judgment" (quotation marks omitted)); *Beriones v. IMH Asset Corp.*, 2023 WL 4412169, at *4 (S.D. Cal. 2023) ("Requesting that a federal court nullify or void a state court order is tantamount to rejecting the state court order and is barred by *Rooker-Feldman*."). The Court thus lacks subject matter jurisdiction over the Petition, even if Thorstenson raises federal constitutional or statutory claims or rights. *See Noel*, 341 F.3d at 1155. The Petition thus must be dismissed for lack of jurisdiction.

### III. LEAVE TO AMEND

Because the Petition must be dismissed for lack of jurisdiction, the next question is whether Plaintiffs should be given leave to amend. No allegation of different facts would save the Petition given the relief Thorstenson seeks, so amendment would be futile and is

therefore properly denied. *See Grondal v. United States*, 37 F.4th 610, 621 (9th Cir. 2022) (affirming denial of leave to amend petition for writ of mandamus where leave to amend would "be pointless"). Plaintiffs moved to amend, but the proposed amended pleading would in essence constitute a new action, consisting of entirely different defendants and claims: the Petition challenged the State Court's order, whereas the proposed amended pleadings assert claims against, among others, the City of Phoenix, Maricopa County, and Mohave County, for an alleged "33-year racketeering enterprise." (*See* Docs. 4, 5, 13; Doc. 5 at 1.) Amendment is thus not proper. *See Davis v. Penzone*, 2019 WL 4481911, at *5 (D. Ariz. 2019) ("A true amended complaint amends the *original* claims, whereas a supplemental complaint adds new claims.").

To the extent Plaintiffs had moved to supplement their pleading, rather than amend it, that request would still be denied. A request to supplement a pleading can be "denied if granting the motion would, in effect, result in two separate actions within the same case." *Id.*; *see also Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) ("While leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action." (citation modified)). Because the proposed supplemental pleading would in essence "involve[] a new and distinct action," *Neely*, 130 F.3d at 402, amendment or supplementation is improper. The motion for leave to amend is thus denied.

Given this conclusion—dismissal for lack of subject matter jurisdiction without leave to amend—the remaining motions in this action are denied as moot.

Accordingly,

**IT IS ORDERED** that:

(1) the Petition (Doc. 1) is **dismissed without leave to amend** for lack of subject matter jurisdiction;

(2) the motion for leave to file a FAC (Doc. 4) is **denied**;

(3) the emergency motions for TRO and PI (Docs. 6, 7, 14) are **denied as moot**;

(4) the motion for evidence preservation (Doc. 8) is **denied as moot**;

    (5)    the IFP applications (Docs. 15, 30, 31) are **denied as moot**;

    (6)    the motion for asset forfeiture and business dissolution (Doc. 16) is **denied as moot**;

    (7)    the motion for an FBI civil rights investigation (Doc. 17) is **denied as moot**;

    (8)    the motion for consolidation (Doc. 29) is **denied as moot**; and

    (9)    the motion for service of process (Doc. 34) is **denied as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 15th day of August, 2025.

_____
Honorable Sharad H. Desai
United States District Judge